IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COOPER ZIETZ ENGINEERS, INC., dba
AKANA, an Oregon corporation,

               Plaintiff,

      v.

THE AKANA GROUP, INC., a Texas
corporation,

               Defendant.

Case No. 3:21-cv-01584-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      Cooper Zietz Engineers, Inc., which does business as "Akana" ("Plaintiff"), filed this

action against The Akana Group, Inc. ("Defendant"), alleging claims under the Lanham Act for

trademark infringement and unfair competition and a claim for common law trademark

infringement. On February 14, 2023, after the Clerk of Court entered default and Plaintiff filed a

motion for default judgment, the Court entered default judgment and a permanent injunction

against Defendant. (*See* ECF Nos. 10, 13, 15, 17-18.)

      On March 2, 2023, Defendant moved, pursuant to Federal Rules of Civil Procedure

("Rule") 55(c) and 60(b)(1), to vacate the Clerk of Court's entry of default and the Court's

default judgment and permanent injunction. Defendant also moved, pursuant to Rules 12(b)(2) and 12(b)(5), to dismiss the complaint for insufficient service of process and lack of personal jurisdiction.[1]

The Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court grants in part and denies in part Defendant's motion to vacate and denies Defendant's motion to dismiss under Rules 12(b)(2) and 12(b)(5).

## DISCUSSION

## I.    DEFENDANT'S MOTION TO VACATE

### A.    Applicable Law

Rule 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." FED. R. CIV. P. 55(c) (bold omitted). Rule 60(b) provides for relief from a district court's final judgment on six grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(1)-(6).

---

[1] The Court discusses additional background facts as relevant to its analysis below. Court document citations herein refer to the CM/ECF-generated page numbers. *See generally Atkins v. Stivers*, No. 21-5798, 2021 WL 7084872, at *1 (6th Cir. Dec. 16, 2021) (explaining that "'CM/ECF' stands for Case Management/Electronic Case Files and is the federal judiciary's case management and electronic filing system").

Defendant seeks relief under Rule 60(b)(1) based upon "excusable neglect." (Def.'s Mot. Vacate Default J. & Permanent Inj. ("Def.'s Mot. Vacate") at 2, 15, 15 n.2, ECF No. 25.) When a defendant seeks such relief, "a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party."[2] *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015) (brackets omitted) (quoting *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010)).

In other words, a "court applies the same three factors governing the inquiry into 'good cause' under Rule 55(c) [for setting aside entries of default]." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (citing *Mesle*, 615 F.3d at 1091); *see also Aguilar*, 782 F.3d at 1107 n.8 (referring to *Mesle*, a case about whether to set aside entry of default, and explaining that "[t]he standard for determining whether to set aside entry of default for 'good cause' under Rule 55(c) 'is the same as is used to determine whether a default judgment should be set aside under Rule 60(b)'" (quoting *Mesle*, 615 F.3d at 1091)). "Courts often refer to these

---

[2] Defendant also seeks relief under Rule 60(b)(4) based on insufficient service of process. (*See* Def.'s Mot. Vacate at 6.) This is a proper basis for seeking relief under Rule 60(b)(4). *See, e.g.*, *Synthesis Indus. Holdings 1 LLC v. U.S. Bank Nat'l Ass'n*, No. 20-16035, 2021 WL 3486186, at *2 (9th Cir. Aug. 9, 2021) ("Under FRCP 60(b)(4), a judgment is void if it involved a 'jurisdictional error.' '[S]ervice of process is the means by which a court asserts its jurisdiction over the person.' '[I]n the absence of proper service of process, the district court has no power to render any judgment against [a party's] person or property unless the [party] has consented to jurisdiction or waived the lack of process.'" (footnote omitted) (quoting *U.S. Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) and *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007))). As explained below, service of process was sufficient here. Further, at the very minimum, there is at least an "arguable basis for jurisdiction," and the Court therefore denies Defendant's Rule 60(b)(4) motion. *See Bank of N.Y. Mellon v. 7937 Song Thrush Tr.*, 812 F. App'x 726, 727 (9th Cir. 2020) ("Because there is 'an arguable basis for jurisdiction,' the district court did not err in denying [the defendant's] Rule 60(b)(4) motion [based on improper service]." (quoting *Espinosa*, 559 U.S. at 271)).

[three] factors as the '*Falk* factors' because they were first articulated in [the Ninth Circuit's] decision in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984) (per curiam)." *Aguilar*, 782 F.3d at 1105-06. The "standard . . . is disjunctive, such that a finding that any [of the *Falk*] factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* at 1105 (quoting *Mesle*, 615 F.3d at 1091).

### B.    Analysis

The Court makes two preliminary observations. First, the Court notes that Defendant filed its motion to vacate within a few weeks of the Court's entry of default judgment and the permanent injunction, which is well within a "reasonable time" for doing so. *See Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (observing that Rule 60(b)(1) motions "must be filed 'within a reasonable time[,]' . . . [but] that 'reasonable time' may not exceed one year" (quoting FED. R. CIV. P. 60(c)(1))); *see also Icho v. Hammer*, 434 F. App'x 588, 589 (9th Cir. 2011) ("If a [Rule] 60(b)(1) motion is untimely, the district court lacks jurisdiction to consider the merits of the motion." (citing *Nevitt v. United States*, 886 F.2d 1187, 1188 (9th Cir. 1989))).

Second, the Ninth Circuit has "articulated 'two policy concerns' that guide [a court's] review of Rule 60(b) motions in the default judgment context." *Aguilar*, 782 F.3d at 1106 (quoting *Falk*, 739 F.2d at 463). Those concerns are (1) "that Rule 60(b) is 'remedial' and 'must be liberally applied[,]' . . . [and (2)] that a default judgment 'is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Id.* (quoting *Falk*, 739 F.2d at 463). In applying the *Falk* factors below, the Court keeps these concerns in mind. *See id.* ("The 'extreme circumstances' policy language [in *Falk*] was intended to remind courts that default judgments are the exception, not the norm, and should be viewed with great suspicion. When courts apply [the *Falk*] factors, they must keep this policy concern in mind.").

### 1.    Culpable Conduct

"A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *United States v. Brandner*, 707 F. App'x 920, 921 (9th Cir. 2017) (quoting *Mesle*, 615 F.3d at 1092); *see also GemCap Lending I, LLC v. Pertl*, 843 F. App'x 986, 987 (9th Cir. 2021) (making a similar observation about intentionality). If a court is "evaluating the culpability of a legally sophisticated party, 'an understanding of the consequences of [the party's] actions may be assumed, and with it, intentionality." *Brandner*, 707 F. App'x at 921 (quoting *Mesle*, 615 F.3d at 1092); *see also Brandt*, 653 F.3d at 1112 ("The district court's finding that [the defaulting defendant] acted culpably did not preclude it, as a matter of law, from setting aside the default judgment under Rule 60(b)(1) based upon excusable neglect.").

Nothing in the record suggests that Defendant intentionally failed to appear and defend here. Instead, the record suggests that Defendant did not receive notice of this action until after the Court entered default judgment and the permanent injunction. Defendant immediately appeared and defended after receiving such notice. The Court also notes that Plaintiff does not dispute in its response that Defendant's failure to appear and defend was due to excusable neglect, thus entitling it to relief under Rule 60(b)(1).

In sum, the Court concludes that the record does not support a finding of culpability on Defendant's part.

### 2.    Meritorious Defense

"All that is necessary to satisfy the meritorious defense requirement is to allege sufficient facts that, if true, would constitute a defense[.]" *Aguilar*, 782 F.3d at 1107 (quoting *Mesle*, 615 F.3d at 1094). Importantly, "the question whether the factual allegation[s] [are] true is not to be determined by the court when it decides the [defendant's] motion to set aside the default[, and

instead is a] question would be the subject of the later litigation." *Id.* (quoting *Mesle*, 615 F.3d at 1094). The Ninth Circuit has explained that "[t]his approach is consistent with the principle that the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Id.* (simplified).

Defendant represents that it intends to assert the "complete defense of priority" and challenge the breadth of Plaintiff's entitlement to any injunctive relief. (Def.'s Mot. Vacate at 12) (citations omitted). Plaintiff acknowledges that if Defendant can demonstrate any "senior use," Defendant's use would be limited to "specific geographic areas." (Pl.'s Resp. Def.'s Mots. Vacate & Dismiss ("Pl.'s Resp.") at 12, ECF No. 42.) Plaintiff claims that Defendant's senior use assertion is "untrue" (*id.*), which, as discussed above, is not a question for this stage of the litigation. Accordingly, and with respect to the meritorious defense factor, the Court finds that Defendant has satisfied its "not extraordinarily heavy" burden.

### 3.    Prejudice

The prejudice "standard is whether [the plaintiff's] ability to pursue [its] claim[s] will be hindered." *Falk*, 739 F.2d at 463 (citation omitted). Plaintiff will not be prejudiced if the Court grants Defendant's motion to set aside the default, default judgment, and permanent injunction. Plaintiff omitted any claim for damages when it sought the default judgment and permanent injunction, and does not claim prejudice or dispute the presence of excusable neglect. To the extent Plaintiff suggests that it would suffer prejudice from allegedly ongoing infringement, such a suggestion fails to demonstrate that Plaintiff's ability to pursue its claim will be hindered and is outweighed by the benefit of deciding this case on the merits and a developed record.

### 4.    Conclusion

For these reasons, the Court grants Defendant's request for relief under Rule 60(b)(1) based on excusable neglect, and vacates the Clerk of Court's entry of default (ECF No. 12) and

the default judgment and permanent injunction (ECF No. 18). The Court therefore denies as

moot Plaintiff's post-judgment requests for attorney's fees and bill of costs. (ECF Nos. 21-22.)

## II.    DEFENDANT'S MOTION TO DISMISS

Defendant moves, pursuant to Rules 12(b)(2) and 12(b)(5), to dismiss Plaintiffs'

complaint for lack of personal jurisdiction and insufficient service of process. (*See* Def.'s Mot.

Dismiss Insufficient Serv. Process & Lack Pers. Jurisdiction ("Def.'s Mot. Dismiss") at 2, ECF

No. 24.)

### A.    Service of Process

#### 1.    Applicable Law

"The Federal Rules of Civil Procedure govern service of process in federal court[.]"

*Whidbee v. Pierce Cnty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) (citing FED. R. CIV. P. 4). The

Ninth Circuit has explained that "Rule 4 is a flexible rule that should be liberally construed so

long as a party receives sufficient notice of the complaint." *Id.* (quoting *Direct Mail Specialists,*

*Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)). "Nonetheless,

without substantial compliance with Rule 4, 'neither actual notice nor naming the defendant in

the complaint will provide personal jurisdiction.'" *Direct Specialists*, 840 F.2d at 688 (citation

omitted).

Rule 4(h) reflects that there are "two methods for serving a corporation, partnership, or

association." *Rosado v. Roman*, No. 16-cv-00784-SI, 2017 WL 3473177, at *4 (D. Or. Aug. 11,

2017). Those methods are:

> [(1)] 'delivering a copy of the summons and of the complaint to an officer, a
> managing or general agent, or any other agent authorized by appointment or by
> law to receive service of process and—if the agent is one authorized by statute
> and the statute so requires—by also mailing a copy of each to the
> defendant'[;] . . . [(2)] follow[ing] state law for serving a Summons.

*Id.* (quoting FED. R. CIV. P. 4(h)(1)(A)-(B)).

Under Oregon law, "[s]ervice of process on a corporation . . . is governed by Rule 7(D)(3)(b) of the Oregon Rule[s] of Civil Procedure ('ORCP'), which provides a primary service method and four service alternatives." *Id.* The primary method is "set forth in ORCP 7(D)(3)(b)(i), which provides that service is to be effected '[b]y personal service or office service upon a registered agent, officer, or director of the corporation; or by personal service upon any clerk on duty in the office of a registered agent.'" *Id.* (quoting OR. R. CIV. P. 7(D)(3)(b)(i)). This "'office service' option referenced in ORCP 7(D)(3)(b)(i) requires leaving copies of the complaint and Summons at the office during normal working hours with 'the person who is apparently in charge.'" *Id.* (quoting OR. R. CIV. P. 7(D)(2)(c)). For a plaintiff to complete office service, the plaintiff must "also mail the Summons and complaint to the defendant's 'dwelling house or usual place of abode or [the] defendant's place of business or any other place under the circumstances that is most reasonably calculated to apprise the defendant of the existence and pendency of the action.'" *Id.* (quoting OR. R. CIV. P. 7(D)(2)(c)).

## 2.    Analysis

Given Defendant's challenge to service of process, Plaintiff bears the burden of establishing the validity of service of process. *See Alexander-Bonneau v. Safeway, Inc.*, No. 18-00156-MO, 2018 WL 3613979, at *1 (D. Or. July 27, 2018) ("Once service of process is challenged, '[i]t is plaintiff's burden to establish the validity of service of process.'" (quoting *Roller v. Herrera*, No. 18-00057-HZ, 2018 WL 2946395, at *2 (D. Or. June 11, 2018))). Plaintiff has done so here.

Plaintiff argues that it properly served Defendant in accordance with ORCP 7(D)(3)(b)(i), which is Oregon's "primary method" for serving corporations and applicable pursuant to Rule 4(h). (*See* Pl.'s Resp. at 5-7, emphasizing language from and relying on ORCP 7(D)(3)(b)(i)'s allowance for "office service upon a registered agent . . . or by personal service upon any clerk

PAGE 8 – OPINION AND ORDER

on duty in the office of the registered agent" and the manner of office service described under ORCP 7(D)(2)(c)). As explained below, the Court finds that service was adequate under ORCP 7(D).

### a.    The Court's Two-Part Inquiry

The Court "must answer two questions" to determine whether service was adequate under ORCP 7(D). *River v. Boespgflug*, 494 P.3d 980, 984 (Or. Ct. App. 2021) (citing *Baker v. Foy*, 797 P.2d 349, 354-55 (Or. 1990)). The Court must first ask whether "the method of service used to serve the defendant [was] one of the methods identified in ORCP 7(D)(2) and . . . one authorized under ORCP 7(D)(3) to be used with the particular type of defendant[.]" *Id.* (citing *Baker*, 797 P.2d at 354). If the answer to the first question is "yes," then "service is 'presumptively effective.'" *Id.* (quoting *Baker*, 797 P.2d at 354). If the answer to the first question is "'no,' or there is something in the record that overcomes the presumption of validity of service of summons, [the Court must] proceed to [the second question]." *Baker*, 797 P.2d at 354.

The second question under *Baker* is whether the plaintiff's "method of service was [nevertheless] 'reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend.'" *River*, 494 P.3d at 984 (quoting Or. R. Civ. P. 7(D)(1)). If the answer to this "question is 'yes,' then the service requirement in ORCP 7(D)(1) is satisfied." *Id.* (citation omitted). If the answer is "no," then the plaintiff's method of service on the defendant was "invalid." *Baker*, 797 P.2d at 355.

### b.    Oregon Case Law

The Oregon Court of Appeals' decisions in *Williams v. Jett*, 54 P.3d 624 (Or. Ct. App. 2002) and *Gallogly v. Calhoon*, 869 P.2d 346 (Or. Ct. App. 1994), are instructive on the legal

PAGE 9 – OPINION AND ORDER

question of whether service was adequate, *see River*, 494 P.3d at 984 (observing that "[w]hether service was adequate is a legal question") (citation omitted), and in particular, on the issue of when a plaintiff's service efforts are sufficient to satisfy the reasonable notice requirements of ORCP 7(D)(1).[3]

In *Williams*, the plaintiff filed a malpractice suit against the defendant doctor, and a county sheriff "delivered the summons and complaint to [the] defendant's office[] [and left] the papers with the person who, according to the sheriff, was 'apparently in charge.'" 54 P.3d at 624-25. A few days later, the plaintiff's counsel received a letter from the defendant's counsel "acknowledging receipt of the complaint and asking that [the] plaintiff not seek a default judgment without first notifying [the] defendant's counsel." *Id.* at 625 & n.5. Notably, after her counsel received this letter, the plaintiff did not complete service by sending "a follow-up mailing pursuant to ORCP 7(D)(2)(c)," and "took no further actions to effect service." *Id.* at 625. The trial court dismissed the plaintiff's suit on the ground that she failed adequately to serve the defendant. *Id.* at 624.

The "principal issue" on appeal was whether the "plaintiff's efforts to serve [the] defendant constitute[d] adequate service for purposes of ORCP 7." *Id.* at 625. With respect to the first question under *Baker*, the Oregon Court of Appeals noted that the parties agreed that the plaintiff failed adequately to effect office service on the defendant. *Id.* at 626. The Oregon Court of Appeals explained that "although the sheriff delivered the summons and complaint to [the] defendant's office, [the] plaintiff did not effect 'office service' under ORCP 7(D)(2)(c), because [the] plaintiff failed to follow up that delivery by mailing a copy of the summons and complaint

---

[3] "The phrase 'reasonable notice' is a shorthand description of the requirement of adequate service set forth in ORCP 7(D)(1) and . . . not a free-standing concept." *Baker*, 797 P.2d at 352 n.5.

to [the] defendant." *Id.* Consequently, the appeal turned on the second question under *Baker*,

namely, "whether the method of service satisfied the 'reasonable notice' standard of ORCP

7(D)(1)." *Id.*

       The Oregon Court of Appeals held that service was "adequate under ORCP 7(D)(1)

because it was reasonably calculated, under the totality of the circumstances, to apprise [the]

defendant of the action[.]" *Id.* at 624. At the outset, the Oregon Court of Appeals emphasized

that the plaintiff was not arguing that "the sheriff's mere delivery of the summons and complaint

to the person 'apparently in charge' of [the] defendant's office was [alone] sufficient to satisfy

ORCP 7(D)(1)," nor was the plaintiff arguing "some elemental notion of actual notice—that is,

that [the] defendant's counsel's actual receipt of the pleadings and [the] defendant's consequent

ability to respond and defend excused any noncompliance with the requirements of ORCP 7(D)."

*Id.* at 626. With respect to whether the "plaintiff's efforts to serve [the] defendant comported

with ORCP 7(D)(1)," the Oregon Court of Appeals stated that the "relevant circumstances" were

(1) "the fact that the sheriff delivered the summons and complaint to [the] defendant doctor's

professional office and gave those papers to the person who, from the sheriff's perspective, was

'apparently in charge,'" (2) "[t]hereafter, [and] within the permissible time period for making a

follow-up mailing, [the] plaintiff's attorney received a letter from defense counsel indicating that

he had obtained a copy of the complaint and would respond accordingly," and (3) "the record

d[id] not indicate that [the] plaintiff took any additional steps to serve [the] defendant." *Id.* at

628.

       In holding that the plaintiff's service efforts satisfied ORCP 7(D)(1), the Oregon Court of

Appeals explained that given the "information communicated to the plaintiff and his agent after

the office delivery, but still during the reasonable 'window' period for a follow-up mailing, the

office delivery was deemed sufficient to satisfy ORCP 7(D)(1) notwithstanding the lack of a

follow-up mailing[,]" because "[i]n the totality of those circumstances, an objectively reasonable

person in the plaintiff's position would have understood during the relevant time period that no

further steps were necessary for the method of service to satisfy ORCP 7(D)(1)." *Id.* at 629.

Finding the situation comparable to a prior case, the Oregon Court of Appeals also explained that

the "plaintiff delivered the summons and complaint to a person at [the] defendant's professional

address who [the] plaintiff could reasonably assume would deliver the papers to [the] defendant."

*Id.* (citing *Stull v. Hoke*, 957 P.2d 173, 177-78 (Or. Ct. App. 1997)). For further support on this

issue, the Oregon Court of Appeals cited cases where a "process server was not obligated to

establish affirmatively that [a] law office receptionist had a business duty to receive service

[because the] circumstances warranted [an] inference of regular contact between [the] attorney

and office staff member," and "service at the defendant's bookkeeper's office was sufficient

under ORCP 7(D)(1) notwithstanding [the] lack of evidence that the bookkeeper was authorized

to receive service on the defendant's behalf or that the defendant had regular, frequent, and

predictable contacts with the bookkeeper." *Id.* (citing *Hoeck v. Schwabe, Williamson & Wyatt*,

945 P.2d 534, 539-43 (Or Ct. App. 1997) and *Boyd v. Boyd*, 884 P.2d 556, 557-60 (Or. Ct. App.

1994)).

Finally, the Oregon Court of Appeals concluded that the "plaintiff's failure to do the

follow-up mailing was not fatal because [the] plaintiff could [have] reasonably conclude[d],

based on defense counsel's representations, that [the] defendant had received the summons and

complaint and, thus, was afforded an opportunity to appear and defend against the suit." *Id.* For

these reasons, the Oregon Court of Appeals "conclude[d] that plaintiff's efforts were reasonably

calculated, under all the circumstances to afford [the] defendant notice of the pending action." *Id.* (simplified).

As in *Williams*, the Oregon Court of Appeals in *Gallogly* concluded that service was adequate under ORCP 7(D)(1) because under the circumstances, it was reasonably calculated to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. 869 P.2d at 347-49. In *Gallogly*, the plaintiff was unable to serve the defendant lawyer at the address he had listed with the Oregon "Motor Vehicles Division." *Id.* at 347. After the Oregon State Bar ("OSB") notified the plaintiff that the defendant had updated his address, the plaintiff "served a copy of the summons and complaint on [the] defendant's grandmother, who resided at that address." *Id.* The defendant argued that the plaintiff failed to serve him in accordance with ORCP 7(D). *Id.* at 348. The Oregon Court of Appeals disagreed.

The Oregon Court of Appeals explained that the plaintiff did not accomplish substitute service (i.e., the method of service at issue) in accordance with ORCP 7(D)(2) because the grandmother's address was not the defendant's actual dwelling house or abode at the time of service. *Id.* The Oregon Court of Appeals nevertheless held that service was sufficient under ORCP 7(D)(1) because it "occurr[ed] in a manner reasonably calculated to apprise [the defendant] of the filing of the complaint and the necessity of appearing and defending against it." *Id.* In so holding, the Oregon Court of Appeals emphasized the service location and the fact that the defendant identified the location as a place at which he intended to receive notice of important information, and noted that there was "no evidence" that the individual served ever represented that she would undertake the responsibility of serving the defendant and that the plaintiff sent follow-up service by regular mail to the address of the service location:

The issue is whether [the defendant's grandmother's] address is a place at which service could be made that would comply with the requirements of ORCP 7. When a lawyer gives an address to OSB, at which communications about his or her profession can be delivered, that is a significant representation that that address is a place at which the lawyer intends to receive notice of important information. For a lawyer who has no usual place of abode or business, we can conceive of no other place at which notice could be better afforded. Presumably, [the] defendant, a lawyer, would not have given his grandmother's address unless he believed that it was probable that he would receive the correspondence sent to that address. . . .

. . . [T]he process server served an individual at the address designated by [the] defendant as a place to receive professional correspondence, and there is no evidence that the individual served made a representation that she would undertake the responsibility of serving [the] defendant. Based on what the process server knew at that time, he could reasonably believe that service at the address given by [the] defendant to the OSB was tantamount to service at the place where [the] defendant practiced his profession. We conclude that under these circumstances, the service on [the] defendant at that address and the follow-up service by regular mail sent to that address met the requirements of the rule that service occur in a manner reasonably calculated to apprise him of the filing of the complaint and the necessity of appearing and defending against it. . . .

*Id.* at 348-49 (citation omitted).

### c.    Plaintiff's Return of Service

Plaintiff filed its return of service on January 21, 2022, less than three months after filing this suit. (ECF No. 8.) Plaintiff's return of service includes a declaration of service (ECF No. 8 at 1) and declaration of mailing (ECF No. 8-1 at 1), both of which are signed and dated January 14, 2022.

In the service declaration, Olusola Falodun ("Falodun"), a Texas resident, declared under penalty of perjury that (1) at 10:45 a.m. on December 21, 2021, Falodun visited a business suite address in Texas and personally delivered copies of the summons and complaint to the "Clerk at [the] Office of Ed Allen, CPA," (2) from Falodun's perspective, the "identity" of the "authorized clerk" was "confirmed by [the] subject saying yes when named," (3) the "individual accepted service with direct delivery," and (4) the "individual appeared to be a blonde-haired white female

45-55 years of age, 5'8"-5'10" tall and weighing 160-180 lbs with glasses." (ECF No. 8 at 1) (bold omitted).

In the mailing declaration, Laurice Averill ("Averill"), an Oregon resident who maintains a business address in Seattle, Washington, declared under penalty of perjury that on December 23, 2021, after Falodun served the "authorized clerk" at Ed Allen's ("Allen") office, Averill used first class mail to send copies of the summons and complaint to Allen's office.[4] (*See* ECF No. 8-1.) Averill's declaration reflected that she utilized the same suite address Falodun used in Keller, Texas. (*Id.*)

**d.    Disposition**

The parties do not dispute that the method of service Plaintiff used to serve Defendant (i.e., office service) is one of the methods identified in ORCP 7(D)(2) and authorized under ORCP 7(D)(3) to be used on a corporation like Defendant. The parties do, however, dispute (1) whether there is something in the record that overcomes the presumption of validity of service, thus triggering the second inquiry under *Baker*, and (2) if so, whether Plaintiff's method of service was nevertheless reasonably calculated, under all the circumstances, to apprise Defendant of the existence and pendency of the action and afford a reasonable opportunity to

---

[4] Averill repeated verbatim most of the facts from Falodun's declaration, apparently in an attempt to describe the service effort that preceded her follow-up service by first class mail on December 23, 2021, but Averill's declaration includes a typographical error in the description of the actions Falodun took before Averill attempted to "complete[] service" (i.e., "I delivered [sic] the documents . . . to an authorized clerk at the office of Ed Allen, CPA"). (ECF No. 8-1 at 1) (bold omitted). Focusing on this typo in Averill's declaration, Defendant argues that "both process servers inexplicably claim" that they attempted service in Texas, even though only one resides there. (Def.'s Reply Supp. Mots. Vacate & Dismiss ("Def.'s Reply") at 4-6, ECF No. 45; Def.'s Mot. Vacate at 4.) The Court disagrees. In the Court's view, it is clear that Averill was addressing her efforts to "complete" service after Falodun visited Allen's office, and that despite the typo, Averill was not claiming that she attempted service in Texas. (*See* ECF No. 8-1 at 1); OR. R. CIV. P. 7(D)(2)(c) ("[O]ffice service shall be *completed* upon the mailing.") (emphasis added).

appear and defend. (*See* Def.'s Reply at 4-6, disputing whether Plaintiff accomplished office service in accordance with ORCP 7(D)(2) given Defendant's rebuttal evidence, and then turning to the question of whether Plaintiff's service nevertheless satisfied ORCP 7(D)(1)'s reasonable notice standard).

Defendant has overcome the presumption of validity of service. There is no dispute that Plaintiff's process servers, Falodun and Averill, respectively visited and used the correct business suite address for Defendant's then-registered agent, Allen, when they attempted to serve and mail follow-up copies of the summons and complaint to Defendant. (*See* Decl. Chad Johnson Supp. Def.'s Mots. Vacate & Dismiss ("Johnson Decl.") ¶¶ 3-5, ECF No. 28, reflecting that "Ed Allen, CPA, based in Keller, Texas" served as Defendant's "registered agent in Texas from formation [in August 2013] to February 3, 2023," the day Defendant "filed a Certificate of Amendment with the Texas Secretary of State's office identifying a new registered agent"; Decl. Ed Allen Supp. Def.'s Mots. Vacate & Dismiss ("Allen Decl.") ¶ 6, ECF No. 26, demonstrating that Allen maintained an office at the Keller, Texas address that the process servers used; Suppl. Decl. Ed Allen Supp. Def.'s Mots. Vacate & Dismiss ("Suppl. Allen Decl.") ¶¶ 4, 6, ECF No. 46, reflecting that at all relevant times, Plaintiff's counsel and process servers used the "correct" address for Allen's office and that Allen did not "move[] offices" until "[o]n or about May 22, 2022").[5]

---

[5] Allen states that he moved offices "on or about May 22, 2022," a few days after the Court mailed copies of its order granting Plaintiff's motion for entry of default to Allen's address. (*See* ECF Nos. 10-11.) Notably, the Court's May 19, 2022 mailing was not returned as undeliverable. By comparison, the Court's February 14, 2023 mailing of the default judgment to the same address in Keller, Texas was returned as undeliverable. (*See* ECF Nos. 19, 30; *see also* Def.'s Reply at 8, addressing only the return of the second mailing). The Court also notes that Defendant changed registered agents and filed its certification of amendment with the Texas Secretary of State's office not long after the district judge adopted this Court's recommendation

Nevertheless, Allen maintains that he never received notice of this lawsuit until the evening of February 24, 2023, the day Defendant's new registered agent discovered the default judgment and permanent injunction and informed Defendant's president, Chad Johnson ("Johnson"), who then contacted Allen. (*See* Johnson Decl. ¶¶ 5-6, reflecting that Defendant's new registered agent informed Johnson about these matters on "the evening of February 24, 2023"; Allen Decl. ¶ 3, stating that Johnson contacted Allen on that same "Friday night" of February 24, 2023).

Notably, with respect to Falodun's declaration that she delivered copies of the summons and complaint to an "authorized clerk" at Allen's office, Allen declares that he "did not employ anyone matching [the authorized clerk Falodun described] on December 21, 2021," he "only had two employees at that time, neither of whom match [Falodun's] description," and his office was "closed from December 18, 2021 to January 3, 2022" for "the Christmas holiday." (Allen Decl. ¶ 4.)

Proceeding on the assumption that "an individual matching [Falodun's] description was actually served on [December 21, 2021] at [his] office," Allen states that the "individual was not employed by [him] and did not have authority to accept service on [his] behalf." (*Id.* ¶ 5.) With respect to Averill's attempt to mail follow-up copies of the summons and complaint to his office, Allen states that he "never received any documents, by mail or otherwise, providing notice of these proceedings." (*Id.*) To the extent Plaintiff's counsel argues that he also mailed a notice of lawsuit and request for waiver of service to Allen's office in November 2021, the month after Plaintiff filed suit and two months before Averill mailed follow-up copies of the summons and complaint to Allen's office (*see* Pl.'s Resp. at 2-3), Allen states that Plaintiff's counsel identifies

---

to grant Plaintiff's motion for default judgment but before the district judge entered the default judgment and permanent injunction. (*See* ECF Nos. 17-18.)

the correct address but he "never received" any notice or request to waive service.[6] (Allen Decl. ¶ 4.) Allen also states that "[a]t that time, mail would occasionally be mistakenly delivered to [his] neighbor's mailboxes, and vice-versa, but to [his] knowledge [they] would eventually receive the mail intended for [them]" and he never received the notice and request for waiver of service. (*Id.*)

The Court finds that Defendant has overcome the presumption of validity of service given Allen's sworn statements that he never received notice about this suit before February 24, 2023,[7] his office was closed on December 21, 2021, and he did not employ anyone on that date who, at least in his view, "match[ed]" Falodun's description of the authorized clerk/recipient of the summons and complaint. Despite so finding, the Court questions whether Allen's declarations are sufficient to present a conclusive rebuttal of Plaintiff's process servers' declarations. Allen's declarations do not (1) describe the individuals he employed in or around the relevant time period for purposes of assessing equivalency with Falodun's description of the authorized clerk, (2) address whether he employed anyone with similar characteristics in or around the time Falodun visited his office or at any point, or whether he is related to anyone with similar characteristics, (3) address whether any of his employees or relatives ever work at or

---

[6] In arguing that he sent the November 2021 notice and request for waiver of service to Allen's office, Plaintiff's counsel cites the declaration he filed in support of Plaintiff's motion for entry of default judgment. (*See* Pl.'s Resp. at 2-3, citing paragraph three of the "Schnuck Decl.," which on the previous page, counsel defined as the declaration he filed in support of the motion for default judgment). None of Plaintiff's counsel's declarations, however, declare or demonstrate that he did so. (*See* Decl. Scott Schnuck Supp. Pl.'s Resp. Def.'s Mots. Vacate & Dismiss ("Schnuck Decl.") ¶¶ 3-4, ECF No. 43; Decl. Scott Schnuck Supp. Pl.'s Mot. Entry Default J. ¶¶ 1-3, ECF No. 13-2; Decl. Scott Schnuck Supp. Pl.'s Req. Entry Default ¶¶ 1-2, ECF No. 9-2.) The record includes only a copy of a partially completed waiver of service form that Plaintiff's counsel docketed as an unexecuted return. (*See* ECF No. 7.)

[7] The Court again notes that its May 19, 2022 mailing to Allen's office was not returned as undeliverable, and that Allen reports that he did not move offices until a few days later. (*See* ECF No. 11.)

have the ability to access his office outside normal business hours or on days when it is closed, (4) address whether his building complex was open on December 21, 2021, and if so, whether there are non-employees who perform services for suite occupants (i.e., a lobby receptionist), or (5) address whether he had pre- or post-February 24, 2023 discussions with current or former employees, non-employees, or relatives about whether they received any service documents on or around December 21, 2021.

Regardless of whether Defendant has overcome the presumption of validity of service, the Court nevertheless concludes that Plaintiff's method of service was reasonably calculated, under all the circumstances, to apprise Defendant of the existence and pendency of the action and afford a reasonable opportunity to appear and defend. *See generally Davis Wright Tremaine, LLP v. Menken*, 45 P.3d 983, 986-87 (Or. Ct. App. 2002) (explaining that the ORCP 7(D)(1) inquiry concerns "the measures that [the] plaintiff *did* take," does not turn on "whether the defendant ever actually received notice," and "focuses not on the defendant's subjective notice but, instead, on whether the plaintiff's conduct was objectively, reasonably calculated to achieve the necessary end"). As a result, the Court concludes that Plaintiff satisfied the requirements of ORCP 7(D)(1).

Defendant argues that Plaintiff did not satisfy ORCP 7(D)(1)'s reasonable notice standard. (*See* Def.'s Mot. Dismiss at 8-10; Def.'s Mot. Vacate at 9-11, making identical arguments; *see also* Def.'s Reply at 6-7.) In support, Defendant argues that Averill's follow-up mailing was insufficient because she was "required to use restricted delivery," and Plaintiff "ignores [contrary] authority." (Def.'s Reply at 6-7, citing *Davis Wright*, 45 P.3d at 989.) Not so.

In *Davis Wright*, the plaintiff law firm was unable to effect personal service on the defendant and one-time client, there was "no competent evidence of the circumstances of [the

plaintiff's] efforts, including why they were unsuccessful," there was no evidence that the

plaintiff reasonably believed that the defendant was aware of its efforts to effect personal service

at his home or that the defendant was in fact aware of the plaintiff's efforts, and the plaintiff

relied only on mail service. 45 P.3d at 984-88. The Oregon Court of Appeals, however,

recognized that "while 'service by unregistered mail *by itself* is not adequate to satisfy the

reasonable notice requirement of ORCP 7(D)(1),' a 'follow-up mailing by unrestricted delivery,

coupled with other forms of service,' may be sufficient." *Id.* at 988 (quoting *Hoeck*, 945 P.2d at

541); *Hoeck*, 945 P.2d at 541 ("We have held that service by unrestricted mail *by itself* is not

adequate to satisfy the reasonable notice requirement of ORCP 7(D)(1). . . . We have *not* held

that follow-up mailing by unrestricted delivery, coupled with other forms of service, cannot

suffice. Our decision in *Gallogly*, in fact, expressly held that substituted service followed by

service by regular mail was sufficient." (citing *Gallogly*, 869 P.2d at 348-49)). In addition to

these cases, *Williams* also demonstrates that in some cases, a lack of any follow-up mailing is

"not fatal." 54 P.3d at 621.

    Defendant also emphasizes that Falodun's service declaration "does not name the person

allegedly served[.]" (Def.'s Mot. Dismiss at 8; Def.'s Mot. Vacate at 9.) In *Williams*, the process

server/county sheriff delivered the summons and complaint to the defendant doctor's office and

left "the papers with the person who, according to the sheriff, was 'apparently in charge.'" 54

P.3d at 613. *Williams* is distinguishable to the extent the defendant's counsel promptly sent a

letter acknowledging receipt of the complaint and asking that the plaintiff not seek a default

judgment. *See id.* at 613-14. Nevertheless, and although the plaintiff did not argue "the sheriff's

mere delivery of the summons and complaint to the person 'apparently in charge' of [the]

defendant's office was [alone] sufficient to satisfy ORCP 7(D)(1)," *id.* at 615, the Oregon Court

of Appeals based its holding that service comported with ORCP 7(D)(1) on the "relevant circumstances," which "include[d] the fact that the sheriff delivered the summons and complaint to [the] defendant doctor's professional office and gave those papers to the person who, from the sheriff's perspective, was 'apparently in charge.'" *Id.* at 620. The Oregon Court of Appeals then emphasized that the "plaintiff delivered the summons and complaint to a person at [the] defendant's professional address who [the] plaintiff could reasonably assume would deliver the papers to [the] defendant." *Id.* at 621. In support, the Oregon Court of Appeals noted that a process server need not establish affirmatively that the person who received the summons and complaint had a business duty to receive service and that service can be sufficient under ORCP 7(D)(1) without evidence that the recipient was authorized to receive service. *See id.* (citations omitted); *see also Hoeck*, 945 P.2d at 541 ("[This] argument that the process server was obligated to establish affirmatively that the receptionist had a business duty to receive service is simply incorrect.").

Falodun's declaration includes many details (hair color, gender, and estimated age, height, and weight) about the "authorized clerk" she served at Defendant's then-registered agent's office—not just that person who was "apparently in charge." (ECF No. 8 at 1) (bold omitted). Falodun did not name the individual, but she did "confirm[]" her "identity" as "an authorized clerk at office of Ed Allen, CPA," by "saying yes when named" as such, and "accepted service with direct delivery." (*Id.*) There is also no dispute that Falodun visited the correct address for Allen's office or that Averill used the correct address to mail follow-up copies to Allen's office. Allen declares that his office was closed and, on the day in question, he did not employ anyone who, at least in his view, matched Falodun's description of the authorized clerk. As discussed above, however, Allen's declarations do not address many relevant facts and

acknowledge that there had been issues with correctly addressed mail being delivered to the wrong office location. Further, Falodun was not obligated to establish affirmatively that the individual was authorized to receive service.

The Court's reasonable notice inquiry is based on the actions Plaintiff took in an attempt to serve Defendant, not on Defendant's subjective notice or whether Defendant actually received notice. *See Davis Wright*, 45 P.3d at 986-87. With respect to the reasonable notice inquiry, Oregon courts have "emphasize[d] the importance of regular, frequent, and predictable contact by the defendant with the *service location*, and what a plaintiff objectively knows about that contact." *River*, 494 P.3d at 985-86 (emphasis added). The service location was Defendant's registered agent's office, as reflected in public records. Defendant used the same registered agent for nearly a decade, and therefore had regular, frequent, and predictable contact with the service location. Plaintiff objectively knew as much, and Falodun also reasonably believed that she served Allen's authorized clerk. Accordingly, Plaintiff satisfied ORCP 7(D)(1)'s requirements. *See Williams*, 54 P.3d at 628-29 (stating that the process server "gave th[e] papers to the person who, from the [process server's] perspective, was 'apparently in charge'" at the defendant's office and that the plaintiff "could reasonably assume [a person at the defendant's 'professional address'] would deliver the papers to [the] defendant"); *Gallogly*, 869 P.2d at 348-49 (finding service adequate under ORCP 7(D)(1) where "the process server served [the defendant's grandma] at [her] address[, which the defendant had] designated . . . as a place to receive professional correspondence," even though "there [was] no evidence that the [grandma] made a representation that she would undertake the responsibility of serving [the] defendant"); *River*, 494 P.3d at 985 (emphasizing the importance of what the "process server knew at the time of service").

Although not relevant to the reasonable notice inquiry, the Court also notes that in September 2020 and January 2021, about a year before Plaintiff filed suit and Plaintiff's process servers visited and sent follow-up mail to Allen's office, Plaintiff's counsel and Defendant's in-house counsel "exchanged correspondence and had discussions" regarding the parties' trademark dispute and agreement that "an amicable arrangement [was] preferable." (Decl. Dan Chapman Supp. Def.'s Mots. Vacate & Dismiss ("Chapman Decl.") ¶¶ 1-8, ECF No. 27; *id.* Exs. A-B; Schnuck Decl. ¶¶ 3-4; *id.* Ex. B at 1-2; *see also* Compl. ¶ 19, ECF No. 1, alleging that Plaintiff sent February 2020 and January 2021 cease and desist letters). Defendant's counsel blind copied Johnson on his September 2020 email to Plaintiff's counsel (which referenced previous discussions around the time Plaintiff allegedly sent its first cease and desist letter), and acknowledges that he received Plaintiff's counsel's January 15, 2021 letter stating that Plaintiff was unwilling to alter its name and "insist[ed]" that Defendant "promptly cease and desist . . . any infringing use of the [Akana] mark," and requesting that he "contact [Plaintiff's counsel] directly to discuss th[e] matter further." (Chapman Decl. ¶¶ 1, 3-8; *id.* Exs. A-B; Schnuck Decl. Ex. B at 1-2.) Defense counsel's employment relationship with Defendant ended at some point in the next two weeks. (*See* Chapman Decl. ¶¶ 6, 8, reflecting that Defendant's counsel no longer had access to his company email address "after January 2021" and that the January 15, 2021 letter is the last correspondence of which he is aware). Nevertheless, these facts suggest that Defendant was aware that the parties had not reached an amicable arrangement regarding their ongoing trademark dispute, and consequently, there was an imminent threat of a lawsuit.

///

///

PAGE 23 – OPINION AND ORDER

In light of the foregoing, the Court finds that Plaintiff satisfied the requirements of ORCP 7(D)(1). Accordingly, the Court denies Defendant's motion to dismiss for insufficient service of process.

### B.    Personal Jurisdiction

Defendant's motion to dismiss is based on written materials rather than an evidentiary hearing. As a result, Plaintiff bears the burden of making only a prima facie showing of jurisdictional facts. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) ("[W]here . . . the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.") (citation omitted); *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 862 (9th Cir. 2022) ("If the court determines that it will receive only affidavits[,] . . . a plaintiff bears the burden of making only a prima facie showing of jurisdictional facts[.]") (simplified). "In this posture, [a court] take[s] as true all uncontroverted allegations in the complaint and resolve[s] all genuine factual disputes in the plaintiff's favor." *Glob. Commodities*, 972 F.3d at 1106 (citation omitted). The Court finds that Plaintiff has made a prima facie showing of jurisdictional facts.

### 1.    Applicable Law

"An exercise of personal jurisdiction in federal court must comport with both the applicable state's long-arm statute and the federal Due Process Clause." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1212 (9th Cir. 2022) (citing *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994)). Oregon's long-arm statute "authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citing OR. R. CIV. P. 4(L)). Accordingly, the Court must inquire whether its exercise of jurisdiction over Defendant would comport with the limits imposed by

federal due process. *See id.* ("We therefore inquire whether the District of Oregon's exercise of jurisdiction over [the defendant] comports with the limits imposed by federal due process.") (simplified).

"Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has 'at least minimum contacts with the relevant forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.'"[8] *Glob. Commodities*, 972 F.3d at 1106 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)). The Ninth Circuit uses a three-prong "test to analyze 'whether a [defendant's] minimum contacts meet the due process standard for the exercise of specific personal jurisdiction[.]'" *LNS Enters.*, 22 F.4th at 859 (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741-42 (9th Cir. 2013)); *Glob. Commodities*, 972 F.3d at 1107 ("We use a three-prong test for analyzing claims of specific jurisdiction."); *see also Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (explaining that the three-prong inquiry is "commonly referred to as the minimum contacts test").

"First, '[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.'" *Glob. Commodities*, 972 F.3d at 1106 (quoting *Schwarzenegger*, 374 F.3d at 802). Second, the plaintiff's "claim must arise out of or

---

[8] Although there are two bases for personal jurisdiction (i.e., specific and general jurisdiction), the Court need engage only in a specific jurisdiction analysis here because Plaintiff does not assert that Defendant is subject to general jurisdiction in Oregon. *Cf. Burri*, 35 F.4th at 1213 n.4 ("Personal jurisdiction may be specific or general. . . . [The plaintiff] does not contend that the [d]efendants are subject to general personal jurisdiction in [the forum state], so we do not address the analytical framework applicable to general personal jurisdiction cases.").

relate to the defendant's forum-related activities." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).

Third, the district court's exercise of personal jurisdiction over the defendant must be reasonable.

*Id.*

"All three prongs must be satisfied [for a court] to assert personal jurisdiction[.]" *LNS Enters.*, 22 F.4th at 859. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Glob. Commodities*, 972 F.3d at 1107 (quoting *Schwarzenegger*, 374 F.3d at 802).

### 2.    Analysis

Taking the uncontroverted allegations in Plaintiff's complaint as true and resolving all genuine factual disputes in Plaintiff's favor, the Court concludes that Plaintiff has satisfied its burden of making a prima facie showing of jurisdictional facts. *See generally Glob. Commodities*, 972 F.3d at 1106 (explaining that when, as here, a motion is based on written material rather than an evidentiary hearing, a court "take[s] as true all uncontroverted allegations in the complaint and resolve[s] all genuine factual disputes in the plaintiff's favor") (citation omitted).

### a.    Prong One—Purposeful Direction

Plaintiff's claims are based on and related to Defendant's alleged infringement of Plaintiff's federally registered trademark. "Trademark infringement is treated as tort-like for personal jurisdiction purposes, and so [the Court] focus[es] on purposeful direction here." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (citation omitted). "The *Calder* effects test governs [the] inquiry into whether a defendant has purposefully directed activities toward a forum state." *Burri*, 35 F.4th at 1213 (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)).

PAGE 26 – OPINION AND ORDER

Under the *Calder* effects test, "if a defendant: (1) commits an intentional act, (2) expressly aimed at the forum state, that (3) causes harm the defendant knew was likely to be suffered in the forum state, then the defendant has purposefully directed conduct at the forum state." *Id.* (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-69 (9th Cir. 2017), *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002), and *Calder*, 465 U.S. at 788-89). Importantly, "[e]xpress aiming requires more than the defendant's awareness that the plaintiff it is alleged to have harmed resides in or has strong ties to the forum, because the plaintiff cannot be the only link between the defendant and the forum. 'Something more'—conduct directly targeting the forum—is required to confer personal jurisdiction." *Ayla, LLC*, 11 F.4th at 980 (simplified).

Plaintiff has adduced sufficient evidence of "something more" to satisfy the *Calder* effects test. *See id.* (proceeding on written materials in a trademark infringement case and finding that the plaintiff had "adduced sufficient evidence of 'something more' to satisfy the effects test set forth in *Calder*").

Johnson initially declared that Oregon is "not one" of the states in which Defendant "has done business," and that Defendant has "submitted bids for federal contracts involving the delivery of equipment to Oregon by a third-party (namely, local John Deere dealerships), [but Defendant has] never actually been awarded or performed under any such contracts." (Johnson Decl. ¶ 8.) In contrast to Johnson's declaration, Plaintiff's counsel declares that Defendant has "conducted business in . . . Oregon on multiple instances [between 2017 and late October 2021], including publicly verified contracts with the United States Department of the Interior, Bureau of Indian Affairs and Bureau of Land Management, a fact [Plaintiff's counsel] confirmed . . . via the federal government spending tracking website usaspending.gov prior to filing the

[c]omplaint." (Schnuck Decl. ¶ 4.) Plaintiff's counsel also declares that Defendant's "contracts with the [Bureau of Indian Affairs ('BIA')] in Oregon were awarded in July and September of 2021," several months after he sent a letter to Defendant's former in-house counsel objecting to Defendant's continued use of the Akana mark and insisting that Defendant "promptly cease and desist." (*Id.*)

In a supplemental declaration, Johnson addresses the "only evidence" Plaintiff cited to support his claim that Defendant has conducted business in Oregon multiple times between 2017 and late October 2021—namely, the two contracts with the BIA in Oregon. (Suppl. Decl. Chad Johnson Supp. Def.'s Mots. Vacate & Dismiss ("Suppl. Johnson Decl.") ¶ 3, ECF No. 47.) Johnson declares that Defendant has "not contracted with 'BIA in Oregon'" and instead contracted with the Albuquerque, New Mexico-based Indian Education Acquisition Office ("IEAO"), which is "the contracting arm of the [BIA], a sub-agency of the Department of Interior." (*Id.*) Johnson adds that IEAO "awarded" the contracts to Defendant "for the benefit of [Bureau of Indian Education] Chemawa Indian School [(the 'BIE school')] . . . in Salem, Oregon," and that Defendant performed the work contemplated under one of the contracts. (*Id.* ¶¶ 4-8; *but cf.* Johnson Decl. ¶ 8, alleging that the same federal contracts involving, among other things, delivery of "John Deere" equipment to Oregon were "never . . . actually awarded or performed under").

At minimum, there is a factual dispute, which Court must resolve in Plaintiff's favor, about Defendant's performance of relevant business in Oregon. Indeed, Plaintiff's counsel's declaration states that Defendant has conducted business multiple times in Oregon between 2017 and late October 2021, and that Defendant's case-related contacts with Oregon "includ[e]" the BIA contracts. Notably, Defendant's contract with the IEAO—i.e., the type of contract that

Plaintiff claims has resulted in actual confusion among customers (*see* Decl. Timothy Oliver Supp. Pl.'s Resp. Def.'s Mots. Vacate & Dismiss ¶ 2, ECF No. 44, providing an example where the parties' "joint customer," the Confederated Tribes of the Colville Reservation in Washington, "wrongly issued" payment to Defendant for work that Plaintiff performed)—reflects that Defendant (the contractor and/or offeror) would deliver John Deere lawn mowers and floor scrubbers to the BIE school in Salem, Oregon. (Suppl. Johnson Decl. Exs. A-B.) The floor scrubbers contract documents identify the BIE school as the consignee and requisitioning office in Salem, identify the BIE school in the contract's "[p]roject [t]itle," include a BIE email address for the contracting officer's representative ("COR"), Natasha Alonso Chavez ("Chavez"), and identify Chavez as the COR and a "point[] of contact." (*Id.* Ex. B at 1-3; *see also id.* Ex. A at 3, identifying Chavez as a point of contact and "BIE "[r]eceiving [o]fficial" for Defendant's deliveries) (bold and all caps omitted).

Johnson emphasizes that (1) the BIE school-related John Deere contract was ultimately canceled "due to supply chain issues" and thus Defendant never made that delivery to the BIE school, (2) Defendant later arranged for the shipment of the floor scrubbing machines to the BIE school by submitting a purchase order via a manufacturer located in Winnetka, Minnesota, and (3) Defendant did not enter into a contract or agreement with, or contact any representative of, the BIE school. (*Id.* ¶¶ 4-8.) In the Court's view, however, Plaintiff's counsel's declarations about Defendant's multiple instances of performing business in Oregon, coupled with a specific example, which focuses largely on and contemplates performance of services for an Oregon school and contacts, amounts to the "something more" necessary to satisfy the *Calder* effects test. *See Glob. Commodities*, 972 F.3d at 1106 (reflecting that in the current posture, a court must

resolve all genuine factual disputes in the plaintiff's favor and accept uncontroverted allegations as true).

### b.    Prong Two—Defendant's Forum-Related Contacts

Plaintiff's claims arise out of and relate to Defendant's forum-related contacts. *See Ayla, 11 F.4th at 983 n.5* (clarifying that Ninth Circuit "precedents permit but do not require a showing of but-for causation to satisfy the nexus requirement," i.e., the "arises out of or related to test") (simplified). The facts described above clearly demonstrate that at minimum, Plaintiff's claims are related to Defendant's allegedly infringing use of the mark while bidding on and being awarded contracts that are focused on, intended to benefit, and contemplate performance of services on behalf of an Oregon school. The example identifies an Oregon consignee, receiving official, point of contact, and requisitioning office, and Defendant was acting as "Akana." Accordingly, the Court finds that Plaintiff has satisfied the arises out of or related to test.

### c.    Prong Three—Reasonableness

Given that Plaintiff has satisfied the first two prongs, the burden shifts to Defendant to "present a 'compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *Ayla, LLC*, 11 F.4th at 983-84 (citation omitted). In assessing whether a defendant presented a "compelling case," the following seven factors guide a court's decision:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* at 984 (quoting *Freestream*, 905 F.3d at 607).

///

Defendant has not met its burden of presenting a compelling case that the exercise of personal jurisdiction would not be reasonable. *See Glob. Commodities*, 972 F.3d at 1107 (explaining that the defendant bears this burden if the plaintiff succeeds in satisfying the first two prongs). In fact, Defendant's initial motion and reply brief do not address the third factor and focus only on the *Calder* effects test and Johnson's initial, disputed claim (*see* Schnuck Decl. ¶ 4; Compl. ¶ 8) that Defendant has not conducted business in Oregon and has bid on but never been awarded contracts to serve any Oregon-based entities. (*See* Def.'s Mot. Dismiss at 13-15; Def.'s Mot. Vacate at 15-16; Def.'s Reply at 7-14.) Accordingly, Defendant has failed to demonstrate that the Court's exercise of specific personal jurisdiction over it would be unreasonable. *See, e.g.*, *Webb v. Marlon Recreational Prods. USA, Ltd.*, No. 3:15-cv-02380-SB, 2016 WL 7155807, at *5 (D. Or. Oct. 4, 2016) (same).

### 3.    Conclusion

For these reasons, Plaintiff has made a prima facie showing of specific personal jurisdiction over Defendant. The Court therefore denies Defendant's motion to dismiss for lack of personal jurisdiction.

///

///

///

///

///

///

///

///

///

**CONCLUSION**

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART

Defendant's motion to vacate (ECF No. 25), and DENIES Defendant's motion to dismiss (ECF

No. 24). The Court therefore VACATES the default judgment and permanent injunction (ECF

No. 18) and the Clerk of Court's entry of default (ECF No. 12). The Court also DENIES AS

MOOT Plaintiff's post-judgment requests for attorney's fees and bill of costs (ECF Nos. 21-22.)

**IT IS SO ORDERED.**

DATED this 13th day of June, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge